# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

MATTHEW MANN and
MARGARET MORRISSEY,

       Plaintiffs,

v.

JAMES McCLUNG, M.D., ORANGE
REGIONAL MEDICAL CENTER,
DAVOL INC., and C.R. BARD, INC., ,

       Defendants.

------------------------------------------------------X

JUDGE ROBINSON

08 CV 2061

Case No.: _____

FEB 2 9 2008

U.S.D.C. S.D.N.Y.
CASHIERS

## DEFENDANT DAVOL INC.'S AND DEFENDANT C.R. BARD, INC.'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446,
Defendant Davol Inc. ("Davol") and Defendant C.R. Bard, Inc. ("Bard"), (collectively
"Defendants") hereby remove the above-captioned action from the Supreme Court of the State of
New York in and for Orange County, New York, to this Court.  In support of removal,
Defendants state as follows:

## I. THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

1.     Plaintiff commenced this action with his Complaint filed in Supreme Court of the
State of New York in and for Orange County, New York on or about January 23, 2008.  Bard
was served with the Complaint on or about February 11, 2008.  Davol has not been served but
expressly joins in this Notice of Removal.

2.     As required by 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders
served upon Defendants (including Plaintiff's Complaint) is attached hereto as Ex. A.

3.    This Notice of Removal is properly directed to this Court pursuant to 28 U.S.C. § 1446(a), as it is the District Court embracing the Supreme Court of the State of New York in and for Orange County, New York, where Plaintiff's Complaint is pending. *See* 28 U.S.C. § 112(b).

4.    This Notice of Removal is timely under 28 U.S.C. § 1446(b), as it is being filed within 30 days after the first receipt by Davol and Bard, through service, of Plaintiff's Complaint, which sets forth the bases for removal.

5.    Pursuant to 28 U.S.C. § 1446(d), Defendants are filing a written notice of this removal with the clerk of the Supreme Court of the State of New York in and for Orange County, New York, where Plaintiff's Complaint is pending. A copy of this Notice of Removal and the written notice of same provided to the state court is also being served upon Plaintiff's counsel in accordance with 28 U.S.C. § 1446(d).

## II. THIS COURT HAS DIVERSITY JURISDICTION

6.    As will be shown more fully below, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000, and there is complete diversity of citizenship between Plaintiffs and Davol and Bard, the only properly joined defendants. Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

### A. The Amount-In-Controversy Requirement Is Satisfied

7.    Although Davol and Bard deny Plaintiffs' claims, and although Plaintiffs seek an unspecified amount of damages, Defendants state that more than $75,000 is in controversy, and therefore the amount-in-controversy requirement of 28 U.S.C. § 1332(a) has been met. Plaintiffs' claims sound in product liability and seek recovery for personal injuries allegedly caused by a defective medical device, the Bard® Ventralex® hernia repair patch, that was

designed and sold by Davol and used in conjunction with Plaintiff Matthew Mann's hernia repair. (*See* Compl. ¶¶ 24-26.) Plaintiff Matthew Mann alleges that due to its allegedly defective design the Bard® Ventralex® hernia patch failed, and, as a result, he sustained serious personal injuries which include, "[being] rendered sick, sore, lame and disabled; and, [Plaintiff Matthew Mann] was caused to suffer serious and serious, and permanent injuries, including…pain and suffering…" (*Id.* ¶¶ 31-32). Plaintiff also claims that he will continue to have pain and suffering from these injuries into the future and that that the injuries are "reasonably believed to be permanent in nature." (*Id.*) Additionally, Plaintiff claims that he has been "incapacitated from attending to his usual duties, functions, avocations and vocations; and…will continue to be…into the future…and will be deprived of the income and emoluments thereof." (*Id.* ¶ 32). Plaintiff also claims that he continues to be obligated to medical treatment and costs into the future. (*Id.* ¶ 33).

8.     The amount-in-controversy requirement is easily met here because the types of injuries alleged in Plaintiff's Complaint, in combination with Plaintiff's compensatory and punitive damages allegations as to each count of her Complaint, make it facially apparent that the claims are likely above the requisite amount-in-controversy. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (holding that the amount in controversy to be satisfied where plaintiffs alleged economic loss, medical and health expenses, and claimed serious medical conditions). In fact, other plaintiffs have brought other actions against Davol and Bard making similar allegations as the ones expressed here pleading an amount-in-controversy in excess of $75,000. *See, e.g. Kavourgias v. Davol Inc. and C.R. Bard, Inc.*, No. 07-cv-5032 (E.D.N.Y.) (alleging damages in excess of amount required by 28 U.S.C. § 1332) (Ex. B); *cf. In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 295-96 (looking to other suits

involving the same product to resolve amount-in-controversy inquiry). Further, this court in analogous cases has held that the amount-in-controversy threshold is met because, as here, "the complaint . . . does not preclude recovery in excess of $75,000." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 296.

## B. The Parties Properly Joined In This Action Are Completely Diverse

9.     Plaintiffs are residents and citizens of Orange County, New York. (*See* Compl. ¶ 1).

10.     Davol is, and has been at all relevant times, a corporation organized under the laws of the State of Delaware with its principal place of business in Rhode Island. Accordingly, Davol is a citizen of those two states, and not New York. *See* 28 U.S.C. § 1332(c)(1).

11.     Bard is, and has been at all relevant times, a corporation organized under the laws of New Jersey with its principal place of business in New Jersey. Accordingly, Bard is a citizen of New Jersey, and not New York. *See* 28 U.S.C. § 1332(c)(1).

## C.     The Remaining Defendants: James McClung, M.D.'s and Orange Regional Medical Center's Consent To This Removal Is Not Needed.

12.     As set forth more fully below, Dr. James McClung and Orange Regional Medical Center (collectively "Healthcare Defendants") are not proper parties to this suit, and therefore their consent to this removal is unnecessary. *See McKay v. Point Shipping Corp.,* 587 F.Supp. 41, 42 (S.D.N.Y. 1984) ("the agreement of fraudulently joined party to removal is not necessary to the assertion of removal jurisdiction.") (citing *Broidy v. State Mutual Life Assurance Co.,* 186 F.2d 490, 492 (2d Cir.1951)).

### D.  Healthcare Defendants Are Procedurally Misjoined,
**And Their Citizenship Should Be Disregarded For Purposes of Jurisdictional Analysis**

13.     The doctrine of misjoinder, applied through Rules 20 and 21 of the Federal Rules

of Civil Procedure, permits the Court "to sever claims where the [plaintiff's] joinder [of parties

and claims] is procedurally inappropriate and clearly accomplishes no other objective than the

manipulation of the forum, and where the rights of the parties and interest of justice is best

served by severance." *Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004); *see also*

*Federal Insurance Company v. Tyco International Ltd.*, 422 F.Supp.2d 357 (S.D.N.Y. 2006)

("Fraudulent misjoinder" occurs when a plaintiff purposefully attempts "to defeat removal by

joining together claims against two or more defendants where the presence of one would defeat

removal and where in reality there is no sufficient factual nexus among the claims to satisfy the

permissive joinder standard."). "[W]here the non-diverse party cannot be properly joined under

the Federal Rules of Civil Procedure, other interests prevail over that of permitting a plaintiff's

choice of forum." *Greene*, 344 F. Supp. 2d at 685.

14.     The Healthcare Defendants are misjoined as parties here, and should be severed

from this action to sustain this Court's diversity jurisdiction, because Plaintiffs' claims against

them do not arise from the same transaction or occurrence as Plaintiffs' claims against Davol and

Bard. *See In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144 (S.D.N.Y. 2001) (finding,

*inter alia*, that plaintiff's "additional claims against the health care provider for negligent

administration of [the drug] after its withdrawal from the market do not arise out of the same

transaction or occurrence as the claims against the drug manufacturer for negligent marketing

and distribution and failure to warn"); *see also In Re Guidant Defibrillators Product Liability*

*Litigation*, Case No. 0:05-md-01708 (D. Minn. August 30, 2007) (denying plaintiff's motion to

remand case back to Superior Court of Santa Clara County, California and severing the claim

against physician from claims against medical device manufacturer) (Ex. C); *Crockett v. R.J. Reyonlds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006) (severing medical malpractice claim against health care provider defendants from product liability claims against product manufacturer).

15.     Here, in the instant case, the allegations included in the Complaint against Defendants Bard and Davol are legally and factually distinct from the allegations against the Healthcare Defendants. The claims against Davol and Bard involve product-liability-related legal theories whereas the claims asserted by Plaintiffs against the Healthcare Defendants involve a medical negligence claim. (*Id.*) The essence of the claims against Davol and Bard arise from the design, testing, and manufacture of the Bard® Ventralex® Patch before it was implanted in Mr. Mann. In contrast, the basis for the claims against the Healthcare Defendants arises from their negligent failure as health care providers to properly and adequately administer medical treatment. The evidence on the claims against the manufacturers and health care providers will be separate – manufacturer-specific evidence involving the design, testing, and manufacture of the Patch on one hand and health care provider-specific evidence regarding Plaintiffs' treatment and health care providers' rendering of medical services and advice and performing surgery. *See Crockett*, 436 F.3d at 533. This fact encourages the severance of the claims.

16.     Because Plaintiffs' claims against the Healthcare Defendants are separate, distinct, and severable from the claims against Bard and Davol, this Court has the discretion to grant remand with regard to the Healthcare Defendants, but to retain jurisdiction over the claims against Bard and Davol.

17.     The presence of Bard or Davol is not necessary in order for Plaintiff to effectively try its case in any potential lawsuit against the Healthcare Defendants. As such, the claims

presented against the non-diverse Healthcare Defendants and Bard and Davol are improperly misjoined.

### E.    Healthcare Defendants Are Fraudulently Joined, And Their Citizenship Should Be Disregarded For Purposes of Jurisdictional Analysis

18.    A defendant may prove fraudulent joinder by showing that a plaintiff fails to state a cause of action against the non-diverse defendant and that the failure is obvious according to the settled rules of the state.[1]

19.    Assuming that the Healthcare Defendants are citizens of New York (*see* Compl. ¶ 1), their presence in this case does not destroy this Court's diversity jurisdiction because they are "fraudulently joined" as putative defendants.  The fraudulent joinder doctrine prevents a plaintiff from defeating federal diversity jurisdiction merely by naming nominal, non-diverse defendants. In determining whether a non-diverse defendant has been fraudulently joined, this Court must determine whether the facts and allegations stated in Plaintiff's Complaint provide a basis for recovery against the non-diverse defendant.

20.    Here, the allegations set out in Plaintiffs' Complaint provide no basis for recovery against Healthcare Defendants.  Plaintiffs claim that Healthcare Defendants' medical treatment rendered to Plaintiff Matthew Mann was done "carelessly, negligently, recklessly…and…that said treatment constituted recklessness, carelessness, negligence, misfeasance, malfeasance, and medical malpractice, resulting in serious and permanent injuries…" (*See* Compl. ¶ 27).  They provide no specific facts to support these conclusory allegations. *See In re Rezulin Prod. Liab. Litig.*, No. 00cv2843, 2003 WL 43356, at *1 n.2 (S.D.N.Y. Jan. 6, 2003) (finding entirely conclusory allegation of negligence against non-diverse physician-defendant insufficient to state

---

[1] Complete diversity of citizenship exists between Plaintiffs and Bard and Davol, the only parties properly joined as defendants in this action.

a claim and defeat removal on basis of fraudulent joinder); *cf. Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

21.     Plaintiffs' bald allegations that the Healthcare Defendants were "medically negligent" (*see* Compl. ¶ 201) are insufficient to state a claim.  In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court considered a plaintiff's pleading burden and held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. 1955, 1964-65 (2007); *see also id.* at 1965, n.3 ("[FED. R. CIV. P. 8(a)(2)] still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").  Thus, Plaintiffs' claims against the instate defendants are patently insufficient under any applicable standard because the allegations simply do not "possess enough heft" to "raise [Plaintiff's] right to relief above the speculative level," nor do they "remove the case from the realm of conjecture and place it within the sphere of legitimate and rational inference." *Twombly*, 127 S. Ct. at 1965-66.

22.     Because Plaintiffs' allegations fail to demonstrate a viable cause of action against the Healthcare Defendants, those defendants have been fraudulently joined as defendants in this action, and their citizenship should be disregarded for purposes of diversity jurisdiction. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 141 (S.D.N.Y. 2001) (finding fraudulent joinder where plaintiff failed to provide factual allegations that, if proven, would provide basis for relief against non-diverse defendant); *Gomes v. Michaels Stores, Inc.*, No.

CIV. S-06-1921, 2006 WL 3079024, at *1 (E.D. Cal. Oct. 27, 2006) (finding "bare assertion" of potential liability on the part of non-diverse defendant, "without any specific factual allegations," insufficient to defeat removal on basis of fraudulent joinder); *see also In re Baycol Prods. Litig.*, No. 1431, Civ. 03-4954, 2004 WL 1118642, at *2 (D. Minn. May 17, 2004 ("[W]here the Complaint contains no factual allegations specific to any of the Plaintiffs and the medical treatment they received, Plaintiffs have failed to allege a sufficient factual basis for any claims against their physicians. . . . The Court thus finds that the allegations asserted against these Defendants are conclusory at best, and do not defeat a finding of fraudulent joinder."); *Waters v. State Farm Mut. Auto. Ins. Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994) ("Failure to specify a factual basis for recovery against a non-diverse party constitutes a failure to state a claim and fraudulent joinder of that party."); *Doe v. Cloverleaf Mall*, 829 F. Supp. 866, 870 (S.D. Miss. 1993) (denying motion to remand in light of fraudulent joinder of non-diverse defendants, and noting that "[w]here the plaintiff's complaint is devoid of any factual allegations suggesting a basis for recovery against a particular defendant, there can be no ground for concluding that a claim has been stated.").

WHEREFORE, Defendant Davol Inc., Defendant C.R. Bard, Inc. and Bard Device, Inc. respectfully remove this action from the Supreme Court of the State of New York in and for Orange County, New York, to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Should any question arise as to the propriety of this removal, Defendants respectfully request an opportunity to provide briefing and oral argument.

Dated:  February 29, 2008

Respectfully submitted,

PEPPER HAMILTON LLP

Samuel J. Abate, Jr. (SA 0915)
Pepper Hamilton LLP
The New York Times Building
620 Eighth Avenue
37th Floor
New York, NY 10018
Phone:  (212) 808-2706
Fax:  (212) 286-9806
abates@pepperlaw.com

ATTORNEYS FOR DEFENDANT DAVOL
INC. AND DEFENDANT
C.R. BARD, INC.

Of Counsel:
Kirby T. Griffis
Dana A. Gausepohl
Michael L. Junk
Spriggs & Hollingsworth
1350 I Street NW
Washington, DC 20005
Tel: 202-898-5800
Fax: 202-682-1639
kgriffis@spriggs.com
dgausepohl@spriggs.com
mjunk@spriggs.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 29th day of February, 2008, a true and correct copy of the foregoing Notice of Removal has been served upon counsel of record via first-class mail:

James E. Monroe, Esq.
DUPEE & MONROE, P.C.
P.O. Box 470
Goshen, NY 10924


BY: _____
Samuel J. Abate, Jr.

**Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
--------------------------------------------------------------------X
MATTHEW MANN and MARGARET                    INDEX #7616/2007
MORRISSEY

                              Plaintiffs,

                                                  **AMENDED**
          - against -                          **VERIFIED COMPLAINT**

JAMES McCLUNG, M.D., ORANGE REGIONAL
MEDICAL CENTER,  DAVOL, INC., and
C.R. BARD, INC.,

                              Defendants.
--------------------------------------------------------------------X

          The plaintiffs, MATTHEW MANN and MARGARET MORRISSEY, by their attorneys,

DUPÉE & MONROE, P.C., as and for their Amended Verified Complaint, allege the following upon

information and belief:

### AS AND FOR A FIRST CAUSE OF ACTION

          FIRST:          That at all times hereinafter mentioned, the plaintiffs, MATTHEW MANN

and MARGARET MORRISSEY, were and are residents of the County of Orange, State of New

York and are husband and wife.

          SECOND:          That at all times hereinafter mentioned, the defendant, JAMES McCLUNG

M.D. (hereinafter "McCLUNG") was and is a medical doctor duly licensed to practice medicine in

the State of New York.

          THIRD:          That at all times hereinafter mentioned, the defendant, "McCLUNG" kept and

maintained an office for the purpose of his medical practice and pursued such medical practice in

the county of Orange, State of New York.

          FOURTH:          That at all times hereinafter mentioned, the defendant, "McCLUNG" held

himself out to the public as a duly qualified physician.

FIFTH:      That at all times hereinafter mentioned, the defendant, ORANGE REGIONAL MEDICAL CENTER (hereinafter "ORANGE REGIONAL"), was and is a domestic not-for-profit corporation duly organized and existing pursuant to the laws of the State of New York.

SIXTH:      That at all times hereinafter mentioned, the defendant, "ORANGE REGIONAL", was and is located principally in the County of Orange, State of New York.

SEVENTH:      That at all times hereinafter mentioned, the defendant, "ORANGE REGIONAL", was and is a professional corporation that provides medical services, through its agents, officers, servants and/or employees.

EIGHTH:      That at all times hereinafter mentioned, the defendant, "ORANGE REGIONAL", kept and maintained an office for the transaction of business and did operate a hospital in the City of Middletown, County of Orange, State of New York.

NINTH:      That upon information and belief and at all times hereinafter mentioned, the defendant C.R. BARD, INC., (hereinafter "C.R. BARD"), was and is a foreign corporation duly organized and existing pursuant to the laws of the State of New Jersey licensed to transact business in the State of New York and was transacting business in the County of Orange, State of New York sufficient to subject it to the jurisdiction of this Court.

TENTH:  Upon information and belief, at all times hereinafter mentioned, the defendant, "C.R. BARD" committed a tortious act outside the State of New York causing injury to the plaintiff who resides in the State of New York.

ELEVENTH: Upon information and belief,, at all times hereinafter mentioned, the defendant "C.R. BARD" committed a tortious act within the State of New York causing injury to the plaintiff.

TWELFTH: Upon information and belief, at all times hereinafter mentioned, the defendant,

"C.R. BARD", regularly does or solicits business in the State of New York, engages in a persistent course of business and commerce in the State of New York and derives substantial revenues from the goods used or consumed or services rendered in the State of New York.

THIRTEENTH: Upon information and belief, at all times hereinafter mentioned, the defendant "C.R. BARD" expected or should have expected the above named tortious acts to have consequences in New York and that defendant "C.R. BARD" would derive substantial revenue from such interstate or international commerce.

FOURTEENTH: That upon information and belief, and at all times hereinafter mentioned, the defendant, "DAVOL, INC.,: (hereinafter "DAVOL"), was and is a foreign corporation duly organized and existing pursuant to the laws of the State of Rhode Island and was transacting business in the County of Orange, State of New York sufficient to subject it to the jurisdiction of this Court.

FIFTEENTH: Upon information and belief, at all times hereinafter mentioned, the defendant, "DAVOL" committed a tortious act outside the State of New York causing injury to the plaintiff who resides in the State of New York.

SIXTEENTH: Upon information and belief, at all times hereinafter mentioned, the defendant "DAVOL" committed a tortious act within the State of New York causing injury to the plaintiff.

SEVENTEENTH: Upon information and belief, at all times hereinafter mentioned, the defendant, "DAVOL" committed a tortious act outside the State of New York causing injury to the plaintiff who resides in the State of New York.

EIGHTEENTH: Upon information and belief, at all times hereinafter mentioned, the defendant "DAVOL" committed a tortious act within the State of New York causing injury to the plaintiff.

NINETEENTH: Upon information and belief, at all times hereinafter mentioned, the

defendant, "DAVOL" regularly does or solicits business in the State of New York, engages in a persistent course of business and commerce in the State of New York and derives substantial revenues from the goods used or consumed or services rendered in the State of New York.

TWENTIETH: Upon information and belief, at all times hereinafter mentioned, the defendant, "DAVOL" expected or should have expected the above named tortious acts to have consequences in New York and that defendant "DAVOL" would derive substantial revenue from such interstate or international commerce.

TWENTY-FIRST: Upon information and belief, and at all times hereinafter mentioned, the defendant, DAVOL is a wholly owned subsidiary of the defendant, C.R. BARD.

TWENTY-SECOND: As a wholly owned subsidiary, DAVOL, is under the supervision, direction, and control of the defendant, C.R. BARD sufficient to make C.R. BARD liable for the actions and, more specifically, the carelessness, negligence, and recklessness of DAVOL.

TWENTY-THIRD:       That on February 14, 2005, the plaintiff, MATTHEW MANN, presented at the ORANGE REGIONAL for medical care, treatment and surgery to his abdomen for injuries, symptomatology and complaints related to a hernia condition.

TWENTY-FOURTH:       That on February 14, 2005, the defendant, "ORANGE REGIONAL" by its agents, servants, officers, and/or employees, including the defendant, "McCLUNG" did render medical care and nursing care to the plaintiff, MATTHEW MANN, who presented at ORANGE REGIONAL, with a hernia to his abdomen.

TWENTY-FIFTH: That on February 14, 2005, and thereafter, the defendant, "ORANGE REGIONAL", by its agents, servants, officers and/or employees, including the defendant, "McCLUNG" did render medical and surgical care and treatment to the plaintiff, MATTHEW MANN at ORANGE REGIONAL.

TWENTY-SIXTH:    That on February 14, 2005, the defendant, ORANGE REGIONAL", by its agent, officer, servant and/or employee, the defendant, "McCLUNG" did surgically implant a mesh screen made, manufactured, distributed, and/or engineered by C.R. BARD and/or DAVOL into the plaintiff, MATTHEW MANN.

TWENTY-SEVENTH:    That at all times and places as aforesaid, the plaintiff, MATTHEW MANN, was so carelessly, negligently and recklessly treated by the defendants, "ORANGE REGIONAL" and "McCLUNG", that said treatment constituted recklessness, carelessness, negligence, misfeasance, malfeasance, and medical malpractice, resulting in severe, serious and permanent injuries as well as aggravation of said plaintiff's medical condition so as to cause said plaintiff to suffer from the severe, serious and permanent injuries and conditions that are hereinafter alleged.

TWENTY-EIGHTH:  That the injuries sustained by the plaintiff, MATTHEW MANN , and the aggravation of his medical condition and the pain and suffering that he sustained and continues to sustain were and are due solely and wholly to the recklessness, carelessness, negligence, misfeasance, malfeasance and medical malpractice of the defendants, "ORANGE REGIONAL" and "McCLUNG".

TWENTY-NINTH:  That the emergency services as well as the medical care and treatment provided were negligently performed by the defendants, "ORANGE REGIONAL" and "McCLUNG", in that said defendants did not use reasonable care in the exercise of their skills and in the application of their learning and that such negligence, in the care and treatment of the plaintiff, MATTHEW MANN , constituted departures from good and accepted standards of care in emergency medical services, emergency medical treatment, emergency medicine, abdominal surgery and general surgical care and resulted in impairment, enhancement, aggravation and exacerbation of said

plaintiff's injuries and medical condition.

THIRTIETH:  That by reason of the negligence, carelessness, recklessness, misfeasance, malfeasance and medical malpractice of the defendants, "ORANGE REGIONAL" and "McCLUNG", as aforesaid, the plaintiff, MATTHEW MANN , was rendered sick, sore, lame and disabled; and, was caused to suffer severe, serious, and permanent injuries, including, among other things, pain and suffering attendant to the implantation of a mesh screen that the defendants, ORANGE REGIONAL and/or McCLUNG, and each of them, knew or in the exercise of reasonable care should have known was of such poor and defective quality that it would cause serious physical injury to the plaintiff, MATTHEW MANN

THIRTY-FIRST: That by reason of the negligence, carelessness, recklessness, misfeasance, malfeasance, and medical malpractice of the defendants, "ORANGE REGIONAL" and "McCLUNG", as aforesaid, the plaintiff, MATTHEW MANN, was rendered sick, sore, lame and disabled; and, was caused to suffer severe, serious and permanent injuries, and said plaintiff continues to suffer from these injuries such that plaintiff's injuries are reasonably believed to be permanent in nature.

THIRTY-SECOND:  That as a direct and proximate result of the foregoing, the plaintiff, MATTHEW MANN , has been incapacitated from attending to his usual duties, functions, avocations and vocations; and, upon information and belief, will continue to be incapacitated from the same on into the future and will be deprived of the income and emoluments thereof.

THIRTY-THIRD:     That as a direct and proximate result of the foregoing, the plaintiff, MATTHEW MANN, has become obligated for various and sundry expenses attendant to his medical care and treatment; and, upon information and belief, will continue to become obligated for the expenses attendant to his medical care and treatment on into the future.

THIRTY-FOURTH:   That as a direct and proximate result of the foregoing, the plaintiff, MATTHEW MANN , has sustained great injury to his mind and body.

THIRTY-FIFTH:       That solely because of the foregoing, the plaintiff, MATTHEW MANN , has sustained damages in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this cause of action.

## AS AND FOR A SECOND CAUSE OF ACTION
### NEGLIGENCE

THIRTY-SIXTH:  That plaintiff repeats, reiterates and realleges with the same force and effect as if more fully set forth herein at length each and every allegation hereinabove allege and set forth in Paragraph "FIRST" through "THIRTY-FOURTH" of this complaint.

THIRTY-SEVENTH:   The defendants, C.R. BARD and DAVOL, and each of them, their agents, servants and employees negligently, carelessly and recklessly manufactured, designed, fabricated, constructed, assembled, sold and delivered a defective and/or unreasonably dangerous Ventralex "Hernia Patch Ref. No. 0010302 Lot 43L0D368 Patch device which seriously injured the plaintiff.

THIRTY-EIGHTH:   The defendants, C.R. BARD and DAVOL, and each of them by their officers, agents, servants and/or employees and/or by their companys' officers, agents, servants and/or employees were careless, reckless and negligent in the following ways in which it manufactured, designed, fabricated, constructed, delivered and sold the aforementioned Bard Ventralex Hernia Patch device so as to cause the same to be incapable of safe operation; in that it permitted the Ventralex Hernia Patch device to enter into the stream of commerce and to be implanted onto and into the bodies of members of the general public knowing that the Bard Ventralex Hernia Patch device was imperfectly designed, manufactured and fabricated; in that it

failed to manufacture, fabricate, design, construct and assemble the Ventralex Hernia Patch device in accordance with industry standards and the state of the art; in that it failed to take those precautions during the course of manufacture, design, fabrication, construction, testing, assembly and delivery of the Ventralex Hernia Patch device so as to avoid the occurrence of the accident involving the plaintiff as described; in that it failed to eliminate hazards existing under reasonably foreseeable conditions of service and commerce, including intended use and reasonably foreseeable misuse, by engineering means at the earliest feasible stage of the design, fabrication, manufacture, construction or assembly of the Ventralex Hernia Patch device; in that it failed to eliminate hazards existing under reasonably foreseeable conditions of service and commerce, including intended use and reasonably foreseeable use and misuse; in that it failed to utilize acceptable principles, methods and procedures of human factors, engineering and analysis, through product design, construction, instruction manuals and standard operating procedures to eliminate reasonably foreseeable unsafe acts due to human error, failure and oversight; in that the Ventralex Hernia Patch device contained latent properties capable of causing grievous harm to the user thereof that the defendants, and each of them, did not disclose or warn against; in using inferior, improper and defective component parts in the design and manufacture of the aforementioned Ventralex Hernia Patch device; and, in that the defendants, and each of them, were in other ways negligent, careless and/or reckless in the design, manufacture and distribution of the Ventralex Hernia Patch device.

THIRTY-NINTH:  The defendant, C.R. BARD, INC., and DAVOL, INC., and each of them, their agents, servants and employees negligently, carelessly and recklessly manufactured, designed, fabricated and constructed, assembled, sold and delivered a defective and/or unreasonably dangerous Bard Ventralex Hernia Ref. No. 0010302 Lot 43L0D368 Patch device

which seriously injured the plaintiff.

FORTIETH:  The defendants, C.R. BARD and DAVOL, and each of them, their agents, servants and employees negligently, carelessly and recklessly manufactured, designed, fabricated, constructed, assembled, sold and delivered a defective and/or unreasonably dangerous Composix Kugel Mesh Patch device which seriously injured the plaintiff.

FORTY-FIRST:  The defendants, C.R. BARD and DAVOL, and each of them by their officers, agents, servants and/or employees and/or by their companys' officers, agents, servants and/or employees were careless, reckless and negligent in the following ways in which it manufactured, designed, fabricated, constructed, delivered and sold the aforementioned Composix Kugel Mesh Patch device so as to cause the same to be incapable of safe operation;  in that it permitted the Composix Kugel Mesh Patch device to enter into the stream of commerce and to be implanted onto and into the bodies of members of the general public knowing that the Composix Kugel Mesh Patch device was imperfectly designed, manufactured and fabricated; in that it failed to manufacture, fabricate, design, construct and assemble the Composix Kugel Mesh Patch device in accordance with industry standards and the state of the art; in that it failed to take those precautions during the course of manufacture, design, fabrication, construction, testing, assembly and delivery of the Composix Kugel Mesh Patch device so as to avoid the occurrence of the accident involving the plaintiff as described; in that it failed to eliminate hazards existing under reasonably foreseeable conditions of service and commerce, including intended use and reasonably foreseeable misuse, by engineering means at the earliest feasible stage of the design, fabrication, manufacture, construction or assembly of the Composix Kugel Mesh Patch device; in that it failed to eliminate hazards existing under reasonably foreseeable conditions of service and commerce, including intended use and reasonably foreseeable use and misuse; in that it failed to

utilize acceptable principles, methods and procedures of human factors, engineering and analysis, through product design, construction, instruction manuals and standard operating procedures to eliminate reasonably foreseeable unsafe acts due to human error, failure and oversight; in that the Composix Kugel Mesh Patch device contained latent properties capable of causing grievous harm to the user thereof that the defendants, and each of them, did not disclose or warn against; in using inferior, improper and defective component parts in the design and manufacture of the aforementioned Composix Kugel Mesh Patch device; and, in that the defendants, and each of them, were in other ways negligent, careless and/or reckless in the design, manufacture and distribution of the Composix Kugel Mesh Patch device.

FORTY-SECOND: That the defendants, and each of them, by and through their officers, agents, servants and/or employees, had actual and constructive notice of the aforesaid unsafe, dangerous and/or defective conditions in that the conditions existed for a sufficient length of time prior to the happening of the accident that in the exercise of reasonable care and diligence, the defendants could have and should have had knowledge and notice thereof. Further, upon information and belief, the defendants, and each of them, by and through their officers, agents, servants and/or employees created said hazardous and unsafe conditions.

FORTY-THIRD: That by reason of the foregoing, the plaintiff, MATTHEW MANN, was rendered sick, sore, lame and disabled, was caused to sustain serious and severe personal injuries to his mind and body, some of which upon information and belief are permanent, with the permanent effects of pain, disability, disfigurement and loss of bodily function.

FORTY-FOURTH: That solely because of the foregoing, the plaintiff, MATTHEW MANN, has sustained damages in an amount which exceeds the jurisdiction limits of all lower courts which would otherwise have jurisdiction over this cause of action.

## AS AND FOR A THIRD CAUSE OF ACTION
## STRICT PRODUCT LIABILITY

FORTY-FIFTH: That plaintiff repeats, reiterates and realleges with the same force and effect as if more fully set forth herein at length each and every allegation hereinabove allege and set forth in Paragraph "FIRST" through "THIRTY-FOURTH", "THIRTY-SEVENTH" through "FORTY-THIRD" of this complaint.

FORTY-SIXTH: That the defendants, C.R. BARD and DAVOL, and each of them are strictly liable in tort for the plaintiff's injuries and damages as there were defects in the Composix Kugel Mesh Patch device at the time of its manufacture, fabrication, delivery, assembly and sale and said defects were substantial factor in brining about the plaintiff's injuries and the plaintiff, MATTHEW MANN could not have, by the exercise of reasonable care, discovered the defects or perceived the danger therefrom.

FORTY-SEVENTH: That the defendants, C.R. BARD and DAVOL, and each of them are strictly liable in tort for the plaintiff's injuries and damages as there were defects in the Bard Ventralex Hernia Patch Ref. No. 0010302 Lot 43L0D368 device at the time of its manufacture, fabrication, delivery, assembly and sale and said defects were substantial factor in brining about the plaintiff's injuries and the plaintiff, MATTHEW MANN could not have, by the exercise of reasonable care, discovered the defects or perceived the danger therefrom.

FORTY-EIGHTH: That at all times hereinafter mentioned, the Composix Kugel Mesh Patch device was being used for a purpose for which it was intended.

FORTY-NINTH: That at all times hereinafter mentioned, the Bard Ventralex Hernia Patch device Ref. No. 0010302 Lot 43L0D368 was being used for a purpose for which it was intended.

FIFTIETH: That at all times hereinafter mentioned, the Composix Kugel Mesh Patch device was being used by plaintiff, MATTHEW MANN who was a member of the class of persons which the defendant could reasonably have expected to be using the Composix Kugel Mesh Patch device.

FIFTY-FIRST: That at all times hereinafter mentioned, the Bard Ventralex Hernia Patch Ref. No. 0010302 Lot 43L0D368 device was being used by plaintiff, MATTHEW MANN who was a member of the class of persons which the defendant could reasonably have expected to be using the Bard Ventralex Hernia Patch device.

FIFTY-SECOND:    That by reason of the foregoing, the plaintiff has been damaged in an amount in excess of the jurisdictional limits of all other Courts which may have subject matter jurisdiction hereof.

## AS AND FOR A FOURTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF, MATTHEW MANN
## BREACH OF WARRANTY

FIFTY-THIRD: That plaintiff repeats, reiterates and realleges with the same force and effect as if more fully set forth herein at length each and every allegation hereinabove allege and set forth in Paragraph "FIRST" through "THIRTY-FOURTH", "THIRTY-SEVENTH" through "FORTY-THIRD and FORTY-SIXTH" through "FIFTY-FIRST" of this complaint.

FIFTY-FOURTH: Upon information and belief, at the time of the sale of the Composix Kugel Mesh Patch device by the defendants, and/or its authorized representative, the defendants, either by itself, and through authorized representatives, represented and/or warranted that the Composix Kugel Mesh Patch device would be fit for the purpose for which it was intended and that the Composix Kugel Mesh Patch device was of merchantable quality.

FIFTY-FIFTH: Upon information and belief, at the time of the sale of the Bard Ventralex

Hernia Patch Ref. No. 0010302 Lot 43L0D368 device by the defendants, and/or its authorized representative, the defendants, either by itself, and through authorized representatives, represented and/or warranted that the Bard Ventralex Hernia Patch device would be fit for the purpose for which it was intended and that the Bard Ventralex Hernia Patch device was of merchantable quality.

FIFTY-SIXTH: That the Composix Kugel Mesh Patch device was not of merchantable quality and not fit for the use for which it was intended when sold by the defendants, either by itself or through its authorized representatives.

FIFTY-SEVENTH: That the Bard Ventralex Hernia Mesh Patch Ref. No. 0010302 Lot 43L0D368 device was not of merchantable quality and not fit for the use for which it was intended when sold by the defendants, either by itself or through its authorized representatives.

FIFTY-EIGHTH: That the Composix Kugel Mesh Patch device was sold by defendants, either by itself or through its authorized representatives so that the Composix Kugel Mesh Patch device could be utilized by the plaintiff.

FIFTY-NINTH: That the Bard Ventralex Hernia Patch Ref. No. 0010302 Lot 43L0D368 device was sold by defendants, either by itself or through its authorized representatives so that the Bard Ventralex Hernia Patch device could be utilized by the plaintiff.

SIXTIETH: That the plaintiff, MATTHEW MANN, was among the class of persons that the defendants could reasonably have expected to be using the Composix Kugel Mesh Patch device.

SIXTY-FIRST: That the plaintiff, MATTHEW MANN, was among the class of persons that the defendants could reasonably have expected to be using the Bard Ventralex Hernia Patch device.

SIXTY-SECOND: That the injuries and damages sustained by the plaintiff were the direct and proximate result of the breaches of warranty of merchantability and fitness for use intended made by the defendant upon the sale of the Composix Kugel Mesh Patch device

SIXTY-THIRD: That the injuries and damages sustained by the plaintiff were the direct and proximate result of the breaches of warranty of merchantability and fitness for use intended made by the defendant upon the sale of the Bard Ventralex Hernia Patch Ref. No. 0010302 Lot 43L0D368 device

SIXTY-FOURTH: That by reason of the foregoing, the plaintiff, MATTHEW MANN has been damaged in an amount in excess of the jurisdictional limits of all other Courts which may have subject matter jurisdiction hereof.

## AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, MARGARET MORRISSEY LOSS OF SERVICES

SIXTY-FIFTH: The plaintiff repeats, reiterates and realleges with the same force and effect as if more fully set forth herein at length each and every allegation hereinabove allege and set forth in Paragraph "FIRST" through "THIRTY-FOURTH", "THIRTY-SEVENTH" through "FORTY-THIRD" FORTY-SIXTH" through "FIFTY-FIRST" and FIFTY-FOURTH through "SIXTY-THIRD" of this complaint.

SIXTY-SIXTH: That the plaintiff, MARGARET MORRISSEY was the wife and spouse of the plaintiff, MATTHEW MANN, and resided with him at the time of the events complained of.

SIXTY-SEVENTH: That as a direct and proximate result of the foregoing, the plaintiff, MARGARET MORRISSEY has become obligated to nurse and care for her husband, and for the expenses attendant to the medical care and treatment required by her husband, MATTHEW MANN,

in order to treat and cure her injuries and damages.

SIXTY-EIGHTH : That the plaintiff, MARGARET MORRISSEY has been deprived of the society, companionship, financial support, services and consortium with her husband, MATTHEW MANN, and will continue to be so deprived on into the future.

SIXTY-NINTH: That by reason of the foregoing, the plaintiff, MARGARET MORRISSEY, has been damaged in an amount in excess of the jurisdictional limits of all other Courts which may have subject matter jurisdiction hereof.

WHEREFORE, the plaintiffs, MATTHEW MANN and MARGARET MORRISSEY, demand judgment against the defendants as follows:

a)    On the First Cause of Action, a sum in excess of the jurisdictional limits of any other court that might otherwise have jurisdiction over the parties and subject matter hereof;

b)    On the Second Cause of Action, a sum in excess of the jurisdictional limits of any other court that might otherwise have jurisdiction over the parties and subject matter hereof; and

c)    On the Third Cause of Action, a sum in excess of the jurisdictional limits of any other court that might otherwise have jurisdiction over the parties and subject matter hereof; and

d)    On the Fourth Cause of Action, a sum in excess of the jurisdictional limits of any other court that might otherwise have jurisdiction over the parties and subject matter hereof; and

e)    On the Fifth Cause of Action, a sum in excess of the jurisdictional limits of any other court that might otherwise have jurisdiction over the parties and subject matter hereof; together with

g)      Such interest, costs and disbursements as are appropriate to the action.

Dated: Goshen, New York
       January 16, 2008

                                   Yours, etc.,

                                   DUPÉE & MONROE, P.C.
                                   Attorneys for Plaintiffs

                                   By: _____
                                         JON C DUPÉE, JR., ESQ.
                                   Office and P.O. Address
                                   30 Matthews Street, Box 470
                                   Goshen, New York 10924
                                   845-294-8900

TO: JAMES McCLUNG, M.D.
    236 Crystal Run Road
    Middletown, New York 10940

TO: ORANGE REGIONAL MEDICAL CENTER
    60 Prospect Avenue
    Middletown, New York 10940

TO: DAVOL, INC.,
    100 Sockanossett Crossroad
    Cranston, Rhode Island 02920

TO: C.R. BARD, INC.
    730 Central Avenue
    Murray Hill, New Jersey 07974

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
-----------------------------------------------------------------X
MATTHEW MANN and MARGARET
MORRISSEY                                            INDEX #7616/2007

                              Plaintiffs,

         -  against  -
                                              **CERTIFICATE OF MERIT**

JAMES McCLUNG, M.D., ORANGE REGIONAL
MEDICAL CENTER, DAVOL, INC., and
C.R. BARD, INC.

                              Defendants.
-----------------------------------------------------------------X

        JAMES E. MONROE, ESQ., an attorney duly admitted to practice law in the State of New

York, and a member of the firm of DUPÉE & MONROE, P.C., attorneys for the plaintiffs,

MATTHEW MANN and MARGARET MORRISSEY in the within action, hereby affirms under

penalty of perjury:

        1. I have reviewed the facts of this case and have consulted with at least one physician who

is licensed to practice medicine in the State of New York and who I reasonably believe is

knowledgeable in the relevant issues involved in this matter. I have concluded on the basis of the

review and the consultation that there is a reasonable basis for the commencement of this action.

Dated: Goshen, New York
        January 16, 2008

                                              _____
                                              JAMES E. MONROE, ESQ.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

MATTHEW MANN and MARGARET MORRISSEY,

Plaintiffs,

-against-

JAMES McCLUNG, M.D., ORANGE REGIONAL MEDICAL CENTER, DAVOL,
INC., and C.R. BARD, INC.,

Defendants.

## AMENDED SUMMONS AND AMENDED COMPLAINT

### DUPÉE & MONROE, P.C.

*Attorneys for Plaintiffs*

*211 Main Street*
*P.O. BOX 470*
*GOSHEN, NEW YORK 10924*
*(845) 294-8900*

*To:*

*Attorney(s) for*

*Service of a copy of the within*
*Dated:*                                                                          *is hereby admitted.*

*Attorney(s) for*

**PLEASE TAKE NOTICE**

**NOTICE OF ENTRY** *that the within is a (certified) true copy of an entered in the office of the clerk of the within named Court on*

**NOTICE OF SETTLEMENT** *that an Order of which the within is a true copy will be presented for settlement to the Hon. one of the judges of the within named Court, at on . at M.*

*Dated:*

### DUPÉE & MONROE, P.C.
*Attorneys for Plaintiffs*
*211 Main Street*
*P.O. BOX 470*
*GOSHEN, NEW YORK 10924*

*To:*
*Attorney(s) for*

**Exhibit B**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-------------------------------------------------------------X
LYNNE KAVOURGIAS,

                    Plaintiff,

     -against-

DAVOL, INC., and C.R. BARD, INC.,

                Defendants.
-------------------------------------------------------------X

Index No.: _____

**VERIFIED COMPLAINT**

Plaintiff LYNNE KAVOURGIAS, by and through their attorneys, Napoli Bern & Associates, LLP, brings this action against Defendants DAVOL, INC., and C.R. BARD, INC., and allege upon, information and belief, and at all times hereinafter mentioned, as follows:

## PARTIES

1.  Plaintiff, LYNNE KAVOURGIAS, hereinafter "Ms. Kavourgias" or "Plaintiff," was and is a resident of the County of Queens, State of New York, and resides at 154-47 28th Avenue, Flushing, New York 11354.

2.  Plaintiff bring this action for damages for the severe and permanent personal injuries she sustained, in consequence of her use of a defective implantable product known as a "Composix Kugel Hernia Patches," used to repair ventral or incisional hernias ("subject patch") which product was designed, tested, developed, manufactured, labeled, distributed, promoted, marketed and sold by Defendants DAVOL, INC. ("DAVOL"), and C.R. BARD, INC. ("BARD") (collectively, "Defendants").

3.  On or about April 20, 2005, Ms. Kavorgias underwent an operation to repair her ventral hernia at which time a Composix Kugel Patch was inserted.

4.  At all times herein mentioned, Defendant DAVOL was and is incorporated in the State of Delaware, with its principal place of business in Rhode Island, the address being 7100 Sockanossett Crossroad, Cranston, Rhode Island 02920.

5.  At all times herein mentioned, Defendant DAVOL was and is authorized to do business in the State of New York.

6.  At all times herein mentioned, Defendant DAVOL did and does business and solicits business in New York.

7.  At all times herein mentioned, Defendant C.R. BARD was and is incorporated in New Jersey, with its principal place of business in New Jersey, the address being 730 Central Avenue, Murray Hill, New Jersey.

8.  At all times herein mentioned, Defendant C.R. BARD was and is authorized to do business in the State of New York.

9.  At all times herein mentioned, Defendant C.R. BARD did and does business and solicits business in New York.

10. At all times herein mentioned, Defendant C.R. BARD had and has a registered agent for service of process, namely CT Corporation Systems, located at 111 Eighth Avenue, New York, New York 10011.

11. At all times herein mentioned, Defendant DAVOL was and is a wholly owned subsidiary of defendant C.R. BARD.

12. At all times relevant, Defendant DAVOL was a mere instrumentality, conduit or alter ego for its parent, Defendant C.R. BARD.

13. At all times relevant, Defendant C.R. BARD wholly dominated and continues to dominate the workings and decision-making of DAVOL so that Defendant DAVOL became a

conduit for its parent, Defendant C.R. BARD. At all relevant times, Defendant DAVOL was undercapitalized and performed no independent business.

14. At all times herein mentioned, Defendant DAVOL designed, tested, developed, manufactured, labeled, distributed, marketed and sold Composix Kugel Hernia Patches for repair of hernias.

15. At all times herein mentioned, Defendant C.R. BARD designed, tested, developed, manufactured, labeled, distributed, marketed and sold Composix Kugel Hernia Patches for repair of hernias.

16. At all times herein mentioned, Defendant DAVOL derived substantial revenue from goods used or services provided in the State of New York.

17. At all times herein mentioned, Defendant C.R. BARD derived substantial revenue from goods used or services provided in the State of New York.

18. At all times herein mentioned, Defendant DAVOL derived substantial revenue from interstate commerce.

19. At all times herein mentioned, Defendant C.R. BARD derived substantial revenue from interstate commerce.

20. At all times herein mentioned, Defendant DAVOL expected or should have reasonably expected its acts to have consequences in the State of New York.

21. At all times herein mentioned, Defendant C.R. BARD expected or should have reasonably expected its acts to have consequences in the State of New York.

22. The activities of Defendant DAVOL in New York include, but are in no way limited to, the marketing, promotion, distribution, and sales of Composix Kugel Hernia Patches, including the subject patch.

23.    The activities of Defendant C.R. BARD in New York include, but are in no way limited to, the marketing, promotion, distribution, and sales of Composix Kugel Hernia Patches, including the subject patch.

24.    This Court has jurisdiction over the subject matter and parties to this action.

## AS AND FOR A FIRST CAUSE OF ACTION: DECEPTIVE TRADE PRACTICES

25.    Plaintiff hereby adopts, repeats and realleges by reference herein all the allegations contained in paragraphs "1" through "24" as though fully set forth herein.

26.    At all times herein mentioned, Defendant DAVOL designed, tested, developed, manufactured, labeled, distributed, promoted, marketed and sold Composix Kugel Hernia Patches including the subject patch.

27.    At all times herein mentioned, Defendant C.R. BARD designed, tested, developed, manufactured, labeled, distributed, promoted, marketed and sold Composix Kugel Hernia Patches including the subject patch.

28.    The intended purpose of the Composix Kugel Hernia Patch is to reconstruct soft tissue, including the repair of ventral or incisional hernias. According to the United States Food and Drug Administration, the Composix Kugel Hernia Patch is designed and manufactured to be "placed behind the hernia defect through a small incision. The patch is then held open by a 'memory recoil ring' that allows the patch to be folded for insertion and later spring open and lay flat once it is in place." See, "Class 1 Recall: Bard Composix Kugel Mesh Patch, superseded with an updated notice on March 31, 2006 to include additional product codes and lot numbers recalled by the manufacturer." United States Food and Drug Administration posting dated March 2006."

29.     Defendant DAVOL designs, tests, develops, manufactures, labels, distributes, promotes, markets and sells Composix Kugel Hernia Patches for implantation in patients.

30.     Defendant C.R. BARD designs, tests, develops, manufactures, labels, distributes, promotes, markets and sells Composix Kugel Hernia Patches for implantation in patients.

31.     On or about April 20, 2005, Ms. Kavourgias underwent surgical implantation of the subject patch, at North Shore University Hospital.

32.     Defendant DAVOL sold and/or provided the subject patch to Ms. Kavourgias and/or North Shore University Hospital and/or the implanting surgeons.

33.     Defendant C.R. BARD sold and/or provided the subject patch to Ms. Kavourgias and/or North Shore University Hospital and/or the implanting surgeons.

34.     The subject patch was implanted for its intended purpose: soft tissue reconstruction and treatment and management of a hernia.

35.     Defendant DAVOL designed the subject patch and its component parts, including the memory recoil ring and its housing.

36.     Defendant DAVOL tested the subject patch and its component parts, including the memory recoil ring and its housing.

37.     Defendant DAVOL developed the subject patch and its component parts, including the memory recoil ring and its housing.

38.     Defendant DAVOL manufactured the subject patch and its component parts, including the memory recoil ring and its housing.

39.     Defendant DAVOL labeled, through product and package inserts, the subject patch and its component parts, including the memory recoil ring and its housing.

40. Defendant DAVOL distributed the subject patch and its component parts, including the memory recoil ring and its housing.

41. Defendant DAVOL promoted the subject patch and its component parts, including the memory recoil ring and its housing.

42. Defendant DAVOL marketed the subject patch and its component parts, including the memory recoil ring and its housing.

43. Defendant DAVOL sold the subject patch and its component parts, including the memory recoil ring and its housing.

44. Since the time of plaintiff's injury, Defendant DAVOL has disclosed, albeit in a manner untimely for Ms. Kavourgias and her physical health, that its Composix Kugel Hernia Patches, including the subject patch, and component parts, including the memory recoil ring and its housing, contain design and manufacturing defects.

45. Defendant C.R. BARD designed the subject patch and its component parts, including the memory recoil ring and its housing.

46. Defendant C.R. BARD tested the subject patch and its component parts, including the memory recoil ring and its housing.

47. Defendant C.R. BARD developed the subject patch and its component parts, including the memory recoil ring and its housing.

48. Defendant C.R. BARD manufactured the subject patch and its component parts, including the memory recoil ring and its housing.

49. Defendant C.R. BARD labeled, through product and package inserts, the subject patch and its component parts, including the memory recoil ring and its housing.

50.     Defendant C.R. BARD distributed the subject patch and its component parts, including the memory recoil ring and its housing.

51.     Defendant C.R. BARD promoted the subject patch and its component parts, including the memory recoil ring and its housing.

52.  Defendant C.R. BARD marketed the subject patch and its component parts, including the memory recoil ring and its housing.

53.  Defendant C.R. BARD sold the subject patch and its component parts, including the memory recoil ring and its housing.

54.     Since the time of plaintiff's injury, Defendant C.R. BARD has disclosed, albeit in a manner untimely for Ms. Kavorgias and her physical health, that its Composix Kugel Hernia Patches, including the subject patch, and component parts, including the memory recoil ring and its housing, contain design and manufacturing defects.

55.     On or about March 24, 2006, Defendants DAVOL and C.R. BARD expanded a previous recall of certain of their Composix Kugel Hernia Patches. The expanded recall included the subject patch.

56.     At that time, Defendants DAVOL and C.R. BARD disclosed that memory recoil ring breakages had been reported.  Specifically, Defendants *"identified the potential for...recoil ring weld breakage on lots of product code numbers... ,"* a range that included the subject patch. *See,* "Important Patient Management Information," correspondence dated March 24, 2006 and authored by David Ciavarella, M.D., Staff Vice President, Corporate Clinical Affairs of DAVOL.

57.  Defendants DAVOL and C.R. BARD advised and admitted that the welds of the recoil ring of the subject patch, like those of other Composix Kugel Hernia Patches designed, tested, developed, manufactured, labeled, distributed, promoted, marketed and sold by the Defendants,

*"could break under the stress placed on the large sized products during placement which could lead to potential patient complications such as abdominal pain, bowel perforation or chronic enteric fistulas."*

58.    Unfortunately, these warnings and disclosures came too late for Ms. Kavourgias, who had previously undergone surgical implantation of the subject patch -- well in advance of the recall.

59.    Ms. Kavourgias has suffered and continues to suffer and endure great physical and emotional pain, suffering, serious and permanent physical injuries, and associated economic loss, as a proximate result of the implantation of the subject patch, due to its defects in design and in manufacture.

60.    Ms. Kavourgias' injuries include, but are not limited to: pain; discomfort; loss of mobility; intestinal obstruction; infection; and the necessity of additional surgery to attempt to remove the subject patch and other damages.

61.    Before, after, and at the time of the manufacture, promotion, marketing and sale of the subject patch to Ms. Kavourgias, Defendants DAVOL and C.R. BARD possessed detailed technical information and had knowledge that certain of their Composix Kugel Hernia Patches, including the subject patch, posed potentially significant and life-threatening hazards to patients relying upon them.

62.    Defendants DAVOL and C.R. BARD concealed this information from Ms. Kavourgias and her treating physicians, as well as the consuming public and physicians in general.

63.    As set forth above, Defendants DAVOL and C.R. BARD had a duty to exercise reasonable care in the design, testing, development, manufacture, labeling, distribution, promotion, marketing and sale of their Composix Kugel Hernia Patches and their component parts, including

the subject patch. This duty included an obligation to ensure that the Composix Kugel Hernia

Patches and/or any component part did not fail, break or splinter because of a design and/or

manufacturing defect when used as instructed by the defendants for their intended and foreseeable

purpose(s). This duty also included a duty to warn of known defects that may lead to serious injury

or risk of serious injury.

64.     Defendants DAVOL and C.R. BARD made misrepresentations of material facts,

including but not limited to:

   a.   misrepresenting that their Composix Kugel Hernia Patches, including the
        subject patch, were fit for their intended uses and of merchantable quality;

   b.   misrepresenting that Composix Kugel Hernia Patches, including the subject
        patch, were reliable;

   c.   misrepresenting that Composix Kugel Hernia Patches, including the subject
        patch, were safe and effective for the treatment of medical conditions such
        as those affecting Ms. Kavorgias;

   d.   misrepresenting that Composix Kugel Hernia Patches, including the subject
        patch, would function as intended when necessary;

   e.   misrepresenting that Composix Kugel Hernia Patches, including the subject
        patch, would not function improperly;

   f.   misrepresenting that Composix Kugel Hernia Patches, including the subject
        patch, were not defective;

   g.   misrepresenting that Composix Kugel Hernia Patches, including the subject
        patch, would not otherwise fail to function as intended when put to their
        expected, intended, foreseeable, and/or ordinary purpose(s); and

   h.   misrepresenting that Composix Kugel Hernia Patches, such as the subject
        patch, were not inherently dangerous when used for their intended purpose(s).

65.     Defendants DAVOL and C.R. BARD made omissions of material facts that were

known to them, and which they were obligated to disclose, including but not limited to:

   a.   omitting to disclose the material fact that Composix Kugel Hernia Patches,
        such as the subject patch, were defective, such that they and/or their
        component parts would break and/or splinter upon insertion, and/or otherwise
        fail to function as intended;

b.   omitting to disclose the material fact that the Defendants knew of numerous failures of Composix Kugel Hernia Patches;

c.   omitting to disclose the material fact that the Composix Kugel Hernia Patches were not "reliable;"

d.   omitting to disclose the material fact that Composix Kugel Hernia Patches, including the subject patch, were not safe and effective in the treatment of the medical conditions, such as that affecting Mrs. Kavorgias, for which they were intended,

e.   omitting to disclose the material fact that Composix Kugel Hernia Patches, including the subject patch, would not function as intended when necessary;

f.   omitting to disclose the material fact that Composix Kugel Hernia Patches, including the subject patch, were defective, such that they would break and/or splinter upon insertion or otherwise fail to function as intended when put to their expected, intended, foreseeable, and/or ordinary purpose(s); and

g.   omitting to disclose the material fact that Composix Kugel Hernia Patches, including the subject patch, were inherently dangerous.

66.   These misrepresentations and/or omissions of material fact were false and misleading at the time they were made.

67.   Defendants DAVOL and C.R. BARD negligently and/or carelessly made the foregoing misrepresentations of material fact without basis or adequate information on which to accurately base those representations. Alternatively, the Defendants omitted the foregoing material facts negligently and/or carelessly without basis or adequate information upon which to justify such omissions of material fact and/or with actual knowledge and information to make additional disclosure reasonable and appropriate.

68.   Defendants had a duty to disclose all relevant information about the risks of their Composix Kugel Hernia Patches, including the subject patch, to Ms. Kavourgias and her treating physicians under laws requiring them not to engage in false and deceptive trade practices, and as otherwise alleged in this Complaint. because: A) Defendants made representations and partial disclosures concerning the nature and quality of their products which they had a duty to correct; B) Defendants were in a superior position to know the true state of facts about the dangerous and

defective nature of their Composix Kugel Hernia Patches, including the subject patch, and the risks the subject patch posed to Ms. Kavourgias; and C) the effects and dangers posed by the defective Composix Kugel Hernia Patches, including the subject patch, were not readily apparent.

69.     In the alternative, when the Defendants made the foregoing misrepresentations or omissions of material fact, they knew or should have known them to be false or omissions of material fact, and such misrepresentations and/or omissions of material fact were made intentionally, deliberately, knowingly, wantonly, recklessly and/or in a grossly negligent manner.

70.     The reliance upon the foregoing misrepresentations and/or omissions of material fact by the defendants, Ms. Kavourgias and/or her physician(s) were induced to and did, to their detriment, subject themselves to using Defendants' Composix Kugel Hernia Patches, including the subject patch. Had the defendants not made the foregoing misrepresentations and/or omissions of material fact, Ms. Kavourgias and/or her physician(s) could have avoided such risks, injuries, and/or damages as are set forth herein, and/or considered alternative actions, treatments or products. The reliance of Ms. Kavourgias and her physician(s) was justified and reasonable, because the foregoing misrepresentations and/or omissions of material facts were made by individuals and entities who were in a position to know the true facts, the Defendants.

71.     General Business Law § 349(a) declares unlawful any deceptive acts or practices in the conduct of any business, commerce or trade.

72.     As a direct and proximate result of the aforementioned conduct, misconduct and omissions, Ms. Kavourgias suffered serious and permanent injuries, economic losses associated with all aspects of the care and treatment of her injuries, as well as lost wages, any and all consequential damages, and punitive damages. Ms. Kavourgias will also seek interest, attorney fees, and costs.

73.     The limitations of liability set forth by CPLR 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR 1602:

a)     Pursuant to CPLR 1602(2)(iv), Defendants are liable for all of Ms. Kavourgias' damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that the Defendants owed Ms. Kavourgias a non-delegable duty of care; and

b)     Pursuant to CPLR 1602(7), Defendants are liable for all of Ms. Kavourgias' damages, including but not limited to her non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that the Defendants acted with reckless disregard of the safety of others.

74.     As a result of the foregoing, Ms. Kavourgias has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

75.     By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches at points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take corrective action at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

## AS AND FOR A SECOND CAUSE OF ACTION:
## NEGLIGENCE

76.     Plaintiff repeats and reiterates paragraphs "1" through "75" as if fully set forth at length herein.

77.     At the aforementioned times, including the date Plaintiff suffered a bowel perforation and all other injuries resulting from the subject patch, and the date of surgical implantation of the subject patch, and for some time prior thereto, Defendants DAVOL and C.R.

BARD were engaged in the business of designing, manufacturing, inspecting, testing, marketing, distributing, promoting, and/or selling Composix Kugel Hernia Patches, and their component parts, including the subject patch, throughout the United States, including the state of New York, for consumption and use by certain members of the general public, physicians and medical practices.

78.     During said period of time, and for valuable consideration received, Defendants DAVOL and C.R. BARD, designed, tested, developed, manufactured, labeled, distributed, promoted, marketed and sold the subject defective patch that caused the injuries and damages set forth herein.

79.     Defendants DAVOL and C.R. BARD had a duty, and owed a duty to the Plaintiff, to exercise reasonable care, in light of the generally recognized and prevailing best scientific knowledge, in the design, manufacture, testing, marketing, distributing, promoting, and/or selling of Composix Kugel Hernia Patches, including the subject patch, and their component parts. This duty included an obligation to ensure that the Composix Kugel Hernia Patches, including the subject patch: would function without danger to patients receiving them; did not contain recoil rings with welds that could break under the stress of placement; and did not otherwise break, shatter, split or malfunction when used for their intended purpose(s).

80.     Defendants DAVOL and C.R. BARD breached their duties by negligently designing, manufacturing, testing, marketing, distributing, promoting and/or selling the subject patch, and its component parts, involved in the occurrence giving rise to this complaint.

81.     Defendants DAVOL and C.R. BARD breached their duties by failing to exercise reasonable care in the production of the subject patch.

82. Defendants DAVOL and C.R. BARD breached their duties by failing to exercise reasonable care to ensure that their Composix Kugel Hernia Patches, including the subject patch, would function properly.

83. Defendants DAVOL and C.R. BARD knew or should have known that patients such as the Plaintiff would foreseeably suffer injuries as a proximate result of the failure to exercise ordinary, reasonable, and due care, as described herein.

84. Defendants DAVOL and C.R. BARD, as the designer, manufacturer, tester, marketer, distributor, promoter and/or seller of Composix Kugel Hernia Patches and their component parts, including the subject patch, negligently and/or recklessly breached their duties by failing to warn the Plaintiff and her treating physicians of the dangers associated with the use of the subject patch due to its defective and unsafe condition as aforementioned, and such negligent and/or reckless conduct was a proximate cause of the injuries and damages of the Plaintiff.

85. At the aforesaid times, including when and while surgically implanted in Ms. Kavourgias, the subject patch and its component parts were being used in a manner that was foreseeable and wholly anticipated by the defendants.

86. The subject patch and its component parts were not reasonably safe when being used in a foreseeable manner. Instead, the subject patch and its component parts were defective and unreasonably dangerous when being used for their intended purpose. Defendants DAVOL and C.R. BARD knew, or in the exercise of reasonable care should have known, that said patch and its component parts were defective and unreasonably dangerous when being so used in a foreseeable manner.

87. Defendants DAVOL and C.R. BARD failed to adequately and/or timely warn of the design and manufacturing defects of their Composix Kugel Hernia Patches, including the subject patch.

88. As a direct and proximate result of the aforementioned breaches of duty, the Plaintiff suffered serious injuries and is entitled to damages for her serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat her injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

89. The limitations of liability set forth by CPLR 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR 1602, as set forth above.

90. As a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

91. By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches at points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants DAVOL and C.R. BARD possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take corrective action at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

## AS AND FOR A THIRD CAUSE OF ACTION: STRICT LIABILITY

92. Plaintiff repeats, realleges and reiterates paragraphs "1" through "91" as if fully set forth at length herein.

93. Defendants DAVOL and C.R. BARD were engaged in the business of designing, manufacturing, testing, marketing, distributing, promoting and/or selling Composix Kugel Hernia Patches, including the subject patch. Defendants Composix Kugel Hernia Patches were, and remain, guarantors of the safety of their Composix Kugel Hernia Patches, including the subject patch.

94. Defendants DAVOL and C.R. BARD intended and intends for patients to have their Composix Kugel Hernia Patches, including the subject patch, implanted in their bodies for the reasons described herein.

95. The subject patch and its component parts were defective in design.

96. Additionally, or alternatively, the subject patch and its component parts were defective in their construction or manufacture.

97. As a result of the aforementioned design defects and/or manufacturing defects, the subject patch and its component parts were in a defective condition, unreasonably dangerous to the Plaintiff, and the subject patch was unfit for its intended use, at the time of sale by Defendants DAVOL and C.R. BARD, and at the time of implantation.

98. Composix Kugel Hernia Patches manufactured by Defendants DAVOL and C.R. BARD, including the subject patch, were defective and unreasonably dangerous when implanted, due to the possibility of breakage of the recoil ring weld, causing bowel and vascular injury, and/or other injury resulting from defect(s) in the product.

99.    As a proximate result of the failures and actionable wrongful conduct herein alleged, the subject patch was in a defective condition, unreasonably dangerous in that it was unsafe for its intended use.

100.    Defendants DAVOL and C.R. BARD were and remain strictly liable in tort for the design, manufacture, testing, inspection, distribution, promotion and/or sale of a defective product, the subject patch. Defects in the design and/or manufacture of the subject patch were substantial factors in bringing about the aforesaid occurrence and resulting serious injuries sustained by Ms. Kavourgias.

101.    As a direct and proximate result of the defectively designed and manufactured subject patch, the Plaintiff suffered serious injuries and is entitled to damages for her serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat her injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

102.    The limitations of liability set forth by CPLR 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR 1602, as set forth above.

103.    As a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

104.    By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take

corrective action, such as a recall, at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION: BREACH
## OF IMPLIED WARRANTY

105.    Plaintiff repeats, realleges and reiterates paragraphs "1" through "104 as if fully set forth at length herein.

106.    Defendants DAVOL and C.R. BARD were and remain engaged in the business of designing, manufacturing, testing, marketing, distributing, promoting and/or selling Composix Kugel Hernia Patches, including the subject patch, and their component parts, for ultimate use by and implantation in the bodies of patients, including the Plaintiff, by and through physicians, hospitals, and other health-care providers.

107.    Defendants DAVOL and C.R. BARD are merchants of Composix Kugel Hernia Patches.

108.    By placing Composix Kugel Hernia Patches into the stream of commerce, the Defendants impliedly warranted and represented that their Composix Kugel Hernia Patches, such as the subject patch, were merchantable, and fit, suitable, and safe for their intended use(s).

109.    The Plaintiff, individually and through her physicians, relied upon the skill and judgment of Defendants DAVOL and C.R. BARD, their agents, employees and representatives.

110.    The Plaintiff, individually and through her physicians, relied upon the representations and warranties of Defendants DAVOL and C.R. BARD, their agents, employees and representatives.

111.    All of the aforementioned representations were false, misleading and inaccurate in that Composix Kugel Hernia Patches placed into the stream of commerce by the Defendants, such

as and including the subject patch, were defective, unreasonably dangerous, hazardous and neither merchantable, fit, suitable nor safe for their intended use(s).

112.    Composix Kugel Hernia Patches placed into the stream of commerce by the Defendants, such as and including the subject patch, were also inadequately contained, packaged, and labeled in that the Defendants misrepresented and/or omitted material facts regarding the safety, reliability, and effectiveness of these products, which were neither merchantable, fit, safe nor suitable for their intended use(s).

113.    The defects in the Composix Kugel Hernia Patches, including subject patch, such as defective recoil ring welds, were present at the time the product(s) left the hands of the Defendants and placed into the stream of commerce.

114.    The Defendants thus breached implied warranties of merchantability, fitness and suitability with respect to the Composix Kugel Hernia Patches) such as and including the subject patch.

115.    The Plaintiff was and remains an intended and foreseeable user of the Defendants' Composix Kugel Hernia Patches, and as a direct and proximate result of the Defendants' breach of implied warranties, she suffered serious injuries and is entitled to damages for her serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat her injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

116.    The limitations of liability set forth by CPLR 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR 1602, as set forth above.

117.    As a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

118.    By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take corrective action at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION: BREACH OF EXPRESS WARRANTY

119.    Plaintiff repeats, realleges and reiterates paragraphs "1" through "118" as if fully set forth at length herein.

120.    Defendants DAVOL and C.R. BARD expressly warranted that their Composix Kugel Hernia Patches, including the subject patch, would be designed and constructed in a careful, diligent, and workmanlike manner, free of design and construction defects, and would be safe, reliable, and effective in performing their intended and foreseeable use(s).

121.    Plaintiff, individually and through her physicians, relied upon the skill and judgment of Defendants DAVOL and C.R. BARD.

122.    Plaintiff, individually and through her physicians, relied upon the representations and warranties of Defendants DAVOL and C.R. BARD.

123.    All of the aforementioned representations were false, misleading and inaccurate in that Composix Kugel Hernia Patches placed into the stream of commerce by the Defendants, such

as and including the subject patch, were defective, unreasonably dangerous, hazardous and neither merchantable, fit, suitable nor safe for their intended use(s).

124.    The subject patch was not designed and/or constructed in a careful, diligent and workmanlike manner, free of design and construction defects.

125.    Defendants DAVOL and C.R. BARD thereby breached their express warranties.

126.    As a direct and proximate result of this breach of express warranties, the Plaintiff suffered serious injuries and is entitled to damages for her serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat her injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

127.    The limitations of liability set forth by CPLR 1601 do not apply as this action falls within one or more of the exceptions set forth in CPLR 1602, as set forth above.

128.    As a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

129.    By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take corrective action at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION: FALSE ADVERTISING

130.    Plaintiff hereby repeats, realleges and reiterates by reference herein all the allegations contained in paragraphs "1" through "129" as though fully set forth at length herein.

131.    General Business Law § 350 declares unlawful advertising that is false or misleading in a material respect in the conduct of any business or in the furnishing of any service.

132.    The aforementioned acts, representations and/or omissions by Defendants were deceptive and misleading practices and/or advertising within the meaning of New York's General Business Law.

133.    In reliance upon the foregoing misrepresentations and/or omissions of material fact by the defendant, the Plaintiff and/or the Plaintiff physician(s) were induced to and did, to their detriment, subject themselves to using the Defendants' Composix Kugel Hernia Patches. Had the Defendants not made the foregoing misrepresentations and/or omissions of material fact, the Plaintiff and/or the Plaintiff physician(s) could have avoided such risks, injuries, and/or damages as are set forth herein, and/or considered alternative actions, treatments or products. The reliance of the Plaintiff and the Plaintiff's physician(s) was justified and reasonable, because the foregoing misrepresentations and/or omissions of material facts were made by individuals and entities who were in a position to know the true facts.

134.    As a direct and proximate result of the Defendants' false advertising, the Plaintiff suffered serious injuries and is entitled to damages for her serious and permanent injuries, pain and suffering, physical and emotional distress, lost wages and the amount of costs associated with medical treatment necessary to treat her injuries, any and all consequential damages, punitive damages, as well as interest, attorney fees, and costs.

135.    The limitations of liability set forth by CPLR 1601 do not apply as this action, falls within one or more of the exceptions set forth in CPLR 1602, as set forth above.

136.    As a result of the foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

137.    By reason of their affirmative decisions, consent and/or authorization not to issue notices, warnings and/or instructions that would have accurately and completely conveyed the true risks and hazards of use of their Composix Kugel Hernia Patches points in time relevant to the allegations giving rise to this complaint and at points in time when Defendants possessed such knowledge of the actual hazards, dangers and shortcomings of their Composix Kugel Hernia Patches, to patients and their treating physicians, and by virtue of Defendants' failure to take corrective action at such points in time, Defendants are liable for punitive damages in a sum that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction of this action.

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally, for compensatory damages as well as interest, the costs and disbursements of this action and such other, further and different relief as the Court deems just and proper.  Plaintiff further demands punitive damages in such an amount as a jury deems reasonable given that Defendants engaged in egregious, tortious conduct by which the Plaintiff was aggrieved and given that Defendants egregious, tortious conduct was part of a pattern of similar conduct directed at the public generally.  As a result of the foregoing, Plaintiff prays for relief as follows: Five Million Dollars ($5,000,000.00) on each Cause of Action for a total of Thirty Million Dollars ($30,000,000.00):

| FIRST CAUSE OF ACTION: DECPTIVE TRADE PRACTICES | ($5,000,000.00) |
|---|---|
| SECOND CAUSE OF ACTION: NEGLIGENCE | ($5,000,000.00) |
| THIRD CAUSE OF ACTION: STRICT LIABILITY | ($5,000,000.00) |
| FOURTH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY | ($5,000,000.00) |
| FIFTH CAUSE OF ACTION: BREACH OF EXPRESS WARRANTY | ($5,000,000.00) |
| SIXTH CAUSE OF ACTION: EXPRESS WARRANTY | ($5,000,000.00) |

## TRIAL BY JURY DEMANDED

Plaintiff further demands a trial by jury on all issues to be tried.

Dated: New York, New York
        November 7, 2007

NAPOLI BERN & ASSOCIATES, LLP
*Attorneys for the Plaintiff*

By: _____

Christopher R. LoPalo

3500 Sunrise Highway, Suit T0207
Great River, New York 11739
Phone: (631) 224-1133
Fax:     (631) 224-1774

*Attorneys for Plaintiff*

<u>VERIFICATION</u>

STATE OF NEW YORK     )
                           ) ss.:
COUNTY OF NEW YORK  )

          Christopher R. LoPalo, being duly sworn, deposes and says:

          I am an attorney duly licensed to practice before the Courts of the State of New York and associated with law firm of NAPOLI BERN & ASSOCIATES, LLP., attorneys for the Plaintiff herein.

          I have read the foregoing VERIFIED COMPLAINT and know the contents thereof, and upon information and belief deponent believes the matters alleged therein to be true.

          The source of deponent's information and the grounds of his beliefs are communications, papers, reports, deposition transcripts and investigations contained in the file. The reason why this affirmation is made by plaintiff's counsel, and not the plaintiff is because the plaintiff does not reside in the county where plaintiff's counsel maintains a law practice.

                                    Christopher R. LoPalo

**Exhibit C**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 05-1708 (DWF/AJB) |
| This Document Relates to:<br><br>Emmett David Brown,<br><br>Plaintiff,<br><br>v.<br><br>Civil No. 07-1487 (DWF/AJB)<br><br>Guidant Corporation, an Indiana Corporation; Endovascular Technologies, Inc., a California Corporation and a Division of Guidant Corporation; Guidant Sales Corporation; and Dr. Leland B. Housman,<br><br>Defendants. | **MEMORANDUM OPINION AND ORDER** |

Jeanette Haggas, Esq., Mark E. Burton, Jr., Esq., Nancy Hersh, Esq., and Rachel Abrams, Esq., Hersh & Hersh, counsel for Plaintiff.

Timothy A. Pratt, Esq., Sara J. Romano, Esq., and Dana N. Gwaltney, Esq., Shook Hardy & Bacon, LLP, counsel for Defendants Guidant Corporation, Endovascular Technologies, Inc., and Guidant Sales Corporation.

Michael I. Neil, Esq., and David P. Burke, Esq., Neil, Dymott, Frank, Harrison & McFall, APLC; and Timothy A. Pratt, Esq., Shook Hardy & Bacon, LLP, counsel for Defendant Dr. Leland B. Housman.

The above-entitled matter is before the Court pursuant to Plaintiff Emmett David Brown's Motion to Remand and Motion for Sanctions [28 U.S.C. § 1447] (MDL

No. 05-1708 (DWF/AJB), Doc. No. 1896; Civ. No. 07-1487 (DWF/AJB), Doc. No. 13) and Defendant Leland Housman, M.D.'s Motion to Sever Medical Malpractice Action and Remand Case Back to Superior Court, State of California, County of Santa Clara (MDL No. 05-1708 (DWF/AJB), Doc. No. 1801; Civ. No. 07-1487 (DWF/AJB), Doc. No. 7). For the reasons stated below, the Court grants Brown's Motion to Remand as to Dr. Housman but denies the Motion as to all remaining Defendants, denies Brown's Motion for Sanctions, and grants Dr. Housman's Motion to Sever and Remand.

## BACKGROUND

In 2003, Dr. Housman implanted a Guidant defibrillator in Brown. In June 2005, Brown's defibrillator was recalled. Thereafter, Dr. Housman explanted and replaced Brown's defibrillator and epicardial leads. After the explant and replacement surgery, the leads penetrated through the surgery incision sites on Brown's chest. This penetration caused infection and the need for further surgeries.

On October 24, 2006, Brown filed this case against Defendants Guidant Corporation, Guidant Sales Corporation, Endovascular Technologies, Inc. ("EVT"),[1] and Dr. Housman in the California Superior Court of Santa Clara County, California. Guidant Corporation and Guidant Sales Corporation (collectively "Guidant") are citizens of Indiana. It is undisputed that Brown and Dr. Housman are California residents. The parties dispute EVT's citizenship. Brown asserts that EVT is a citizen of California, and Guidant and EVT assert that EVT is a citizen of Minnesota and Delaware.

---

[1]    EVT is a wholly owned subsidiary of Guidant Corporation.

2

Brown alleges that Dr. Housman committed medical negligence because he implanted a defective defibrillator and negligently removed and replaced it. Brown also asserts that Dr. Housman knew of information provided by Guidant and/or EVT regarding defects with the defibrillators. Brown alleges that Guidant breached its duties as a manufacturer, distributor, and marketer of defibrillators. As to EVT, Brown alleges that it breached its reporting duties under a Corporate Integrity Agreement.

On January 22, 2007, Guidant and EVT removed the case to the United States District Court for the Northern District of California based on diversity of citizenship, asserting that EVT and Dr. Housman were improperly joined. Thereafter, Guidant sought to transfer the case, and on March 6, 2007, the Judicial Panel on Multidistrict Litigation transferred the action to the District of Minnesota as part of MDL No. 1708. On May 18, 2007, Defendant Dr. Housman filed a Motion to Sever and Remand the allegations against him, and, on June 5, 2007, Brown filed a Motion to Remand and Motion for Sanctions.

## I.    Motion to Sever and Remand

Dr. Housman asserts that Brown misjoined Dr. Housman as a party and that the claims against him should be severed from the claims asserted against Guidant and EVT and remanded to state court. The Federal Rules of Civil Procedure allow for permissive joinder of defendants as follows:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(b).[2]  If defendants have been misjoined for the failure to satisfy the conditions for permissive joinder under Rule 20(b), the Rules allow for severance of those defendants:

> Misjoinder of parties is not ground for dismissal of an action.  Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.  Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

Dr. Housman asserts that the claims against him (medical negligence) and Guidant (product liability) are legally distinct and that none of the causes of action overlap one another.  In addition, Dr. Housman asserts that the facts that would support a claim against him involve the quality of medical care given to Brown, whereby the facts that would support a claim against Guidant would have nothing to do with the standard of care for Dr. Housman, but instead would focus on the products used.  Therefore, Dr. Housman contends that the claims arising out of his treatment do not arise out the same transaction or occurrence as the claims against Guidant and EVT.[3]

Brown, on the other hand, contends that Dr. Housman, Guidant, and EVT's actions/inactions do arise out of the same transaction or occurrence.  Brown asserts that

---

[2]     The California rule on permissive joinder is nearly identical to the federal rule and is identical in all relevant parts here. *See* Cal. Civ. Proc. Code § 379(a)(1).

[3]     To the extent that the Court finds that severance and remand is necessary, Guidant and EVT agree with Dr. Housman to the extent that only Dr. Housman should be severed and remanded and that the Court should retain jurisdiction over Brown's claims against Guidant and EVT.

4

he would not have had to endure the surgery whereby the leads were misplaced if his Guidant defibrillator was not defective. Brown also asserts that his surgery shares common questions of law and/or fact with Brown's product liability claims against Guidant and EVT. Brown contends that the chain of events that led to Brown's injury inextricably connects the facts and legal issues surrounding the medical negligence and product liability claims. Specifically, Brown asserts that Dr. Housman's testimony, notes, and other related information regarding Brown's implant and explant surgeries will be required for the negligence, fraud, and CLRA claims against Guidant. Further, Brown contends that he makes the same claim for damages against all Defendants and that each Defendant is jointly and severally liable for the damages Brown sustained.

Upon review of the applicable rules and the pleadings of the parties, the Court finds that Dr. Housman has been improperly joined in this case. Brown's claim against Dr. Housman is medical negligence, which would require evidence on Brown's care, treatment, and services provided by Dr. Housman. Brown's claims against either Guidant or EVT are general negligence or product liability claims based on alleged manufacturing and design defects, alleged failure to properly warn, and alleged misrepresentation of the health risks associated with certain cardiac medical devices. These claims would require evidence on the development, manufacture, and testing of Brown's ICD along with evidence of Guidant and EVT's knowledge, warnings, and representations regarding defective ICD's. The joinder of the malpractice claim against Dr. Housman with the other general negligence and product liability claims was inappropriate because the claims do not both involve common questions of law or fact

5

and assert joint, several, or alternative liability "arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(b). Any liability that may be found against either Guidant/EVT or Dr. Housman would not be a basis for liability as to the other. However, separate liability as to each could be separately found.[4] Furthermore, because of the nature, stage, and progression of this MDL, especially in light of the proposed settlement involving Guidant, "the rights of the parties and interest of justice is best served by severance." Fed. R. Civ. P. 21.

Although some courts faced with fraudulent misjoinder claims have required both a finding of misjoinder and a finding of a bad faith attempt to defeat diversity, other courts have refused to apply the "egregious" standard when considering misjoinder in the context of remand petitions. *See In re: Baycol Products Litig.*, MDL No. 1431 (MJD), Case. No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. 2003) (citing cases). The Eighth Circuit Court of Appeals has not addressed the issue.

Here, as the court in *Greene v. Wyeth* found, the Court "rejects the notion that Plaintiff[] ha[s] committed an egregious act or fraud upon the Court." 344 F. Supp. 2d

---

[4]    While California case law seems to take a broad view of joinder, the Court's finding is still consistent. The California Supreme Court has stated that section 379, subdivision (c) "does not permit the unlimited joinder of defendants; it provides for joinder only when plaintiff pleads a specific relationship between the defendants, namely, a single or cumulative injury, giving rise to doubt as to the respective liability of defendants for that injury. In other words, when a plaintiff states facts showing a reasonable uncertainty as to the respective liability of the defendants, these same facts constitute the connection that links the acts of the defendants and fulfills any claimed requisite of 'factual nexus.'" *Landau v. Salam*, 484 P.2d 1390, 1395 (Cal. 1971). Here, Brown has not alleged that he is in doubt as to which Defendant is liable for which actions.

674, 685 (D. Nev. 2004). "[U]nder our dual court system[, if] a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of *properly* joining a non[-]diverse defendant or a non[-]diverse co-plaintiff, he is free to do so." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977) (emphasis added). However, where a non-diverse party, such as Dr. Housman here, cannot be properly joined under the Federal Rules of Civil Procedure, other interests, such as the Defendants' statutory right of removal, prevail over that of permitting a plaintiff's choice of forum. *See Greene*, 344 F. Supp. 2d. at 685. Because the basis for the causes of action against Dr. Housman do not arise from the same transaction and occurrences as those in the causes of action against Guidant and EVT, the Court will sever the action against Dr. Housman so as to preserve Guidant and EVT's right to removal in the remaining action and to preserve the interests of judicial expediency and justice.

## II.    Motion to Remand

The party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). Generally, a state court action may only be removed if a federal district court would have original jurisdiction to hear the case. 28 U.S.C. § 1441(a).[5]

---

[5]    Section 1441(a) provides in pertinent part:

(Footnote Continued on Next Page)

7

Where the action is based upon diversity jurisdiction, it is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). A corporation is deemed a citizen of the state in which it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). "In determining whether removal was proper, the removal statute is to be narrowly construed and all doubts about the propriety of federal jurisdiction are to be resolved against removal." *In re Potash Antitrust Litig.*, 866 F. Supp. 406, 410 (D. Minn. 1994). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Brown argues that the Court should remand the entire action asserting lack of subject matter jurisdiction and defects in the removal procedure. As to the latter, Brown contends that Guidant and EVT's removal was untimely, did not have proper consent from Dr. Housman, was facially deficient, and did not meet the requisite amount in controversy.

---

(Footnote Continued From Previous Page)

    [A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States.

28 U.S.C. § 1441(a).

### A.     Timeliness/Consent/Deficiency

Brown served Dr. Housman on December 14, 2006. Guidant and EVT removed the action on January 22, 2007. Brown argues that Guidant and EVT had no right to remove because Dr. Housman did not remove nor consent to removal within thirty days of service of the Complaint. Brown also argues that Guidant's removal is facially deficient because Guidant did not explain why Dr. Housman had not joined in the removal. Guidant and EVT assert that Guidant's removal was proper and timely because all properly-joined Defendants consented to removal and neither Guidant nor EVT were served with a summons and complaint; therefore, the 30-day period for removal was never triggered.

"The notice of removal of a civil action . . . shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (holding that a defendant's time to remove is triggered by formal service of the summons and the complaint, not "by mere receipt of the complaint unattended by any formal service"). Removal is proper "if none of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added). Consistent therewith, the usual rule that all defendants in an action in state court join in a petition for removal does not apply to "nominal, unknown, or fraudulently-joined parties." *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

Here, because Dr. Housman was not properly joined, his consent was neither necessary nor did the service of process on him trigger the deadline for removal. Further, as to Brown's assertion that Guidant's removal was facially deficient, the Court disagrees. Guidant and EVT stated in their Notice of Removal that Dr. Housman was improperly joined. (Aff. of Timothy A. Pratt in Supp. of Defs. Guidant Corporation, Endovascular Technologies, Inc. and Guidant Sales Corporation's Opp'n to Pl.'s Mot. to Remand ("Pratt Aff."), Ex. A at 3.) Guidant and EVT also stated that all properly-joined Defendants had consented to removal and that Defendants who are not properly joined need not consent to removal. (*Id.*) Therefore, the Notice of Removal was not facially deficient because Guidant did explain why it did not have Dr. Housman join in the removal. Thus, Brown's untimeliness, non-consent, and facially deficient arguments fail.

**B.    Requisite Amount in Controversy**

Brown also asserts that Guidant and EVT have failed to show the action meets the requisite amount in controversy. Brown points to Guidant and EVT's Notice of Removal, whereby Guidant and EVT assert that the "face of the complaint makes clear that plaintiff seeks damages in excess of $75,000" because Brown seeks "damages for surgical placement and replacement of an allegedly defective defibrillator in him." (Pratt Aff., Ex. A at 11.) Brown contends that this is insufficient to demonstrate that the amount in controversy exceeds $75,000. Guidant and EVT, on the other hand, assert that they have met their burden. Guidant and EVT point to Brown's allegations in the Complaint where he alleges "serious injuries to his chest," (Compl. ¶ 130), and alleges that he "required healthcare and medical services, and incurred direct medical costs for

10

physician care, monitoring, treatment, medications, and supplies." (*Id.*) Guidant and EVT also point out that Brown is seeking general, special, and punitive damages, restitution and disgorgement of profits, compensatory and other damages, costs, including experts' fees and attorneys' fees and expenses, and the costs of prosecuting this action. (Compl., Prayer for Relief at 24.) The Court finds that in light of the allegations plead and in light of the other complaints filed by Brown's attorneys directly in this MDL alleging similar claims and damages whereby they plead that the requisite jurisdictional amount was met, a jury could return an award in excess of $75,000. Therefore, Brown's argument fails.

### C.    Subject Matter Jurisdiction

Brown contends that the Court lacks subject matter jurisdiction, asserting that removal was improper under 28 U.S.C. § 1441(a) because Dr. Housman and EVT are California residents, thereby creating incomplete diversity of citizenship. As to EVT, Brown contends that Guidant has admitted in Answers that it has filed that EVT maintains its principal place of business in California. Therefore, Brown asserts that EVT is a citizen of California causing the Court to have no original jurisdiction. Brown also asserts that under 28 U.S.C. § 1447(c), the case must therefore be remanded.

Guidant and EVT assert that complete diversity of citizenship does exist. Guidant and EVT contend that Dr. Housman's citizenship should be disregarded because he was improperly joined as a defendant. The Court agrees, as is explained above.

As to EVT's citizenship, Guidant and EVT assert that EVT is not a California citizen. Guidant points out that the pleadings that Brown sites to for support that EVT is

a California citizen date back to 2002 and 2003. Guidant explains that at that time, EVT's principal place of business was in California. But Guidant asserts that in October 2006, when the Complaint was filed here, and in January 2007, when the case was removed, EVT had no business operations in California. Citing to Jeffrey Kruse's declaration, Senior Counsel for EVT, Guidant asserts that since June 30, 1989, EVT has been a Delaware corporation, and since April 2006, EVT has had its headquarters and business operations in St. Paul, Minnesota. Therefore, Guidant and EVT assert that EVT is a citizen of Delaware and Minnesota.

Brown's only response to Guidant's assertion is that EVT was a California citizen at the time he was injured in March 2004. Brown, however, asserts no authority for the proposition that the Court should analyze citizenship as of the date of injury for purposes of diversity jurisdiction.

The Court agrees with Guidant and EVT that EVT is not a California citizen. For purposes of diversity jurisdiction, the Court analyzes citizenship as of the date that the Complaint was filed. *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 571 (2004). Therefore, because at the time that the Complaint was filed, EVT was a citizen of Delaware and Minnesota, Guidant was a citizen of Indiana, and Brown was a citizen of California, complete diversity of the parties exists,[6] and the Court denies Brown's

---

[6]     The Court disregards Dr. Housman's citizenship because he was improperly joined in this case, as is explained above.

Motion to Remand as to his case against Guidant and EVT.[7]   Consistent with the Court granting Dr. Housman's Motion to Sever and Remand, the Court grants in part Brown's Motion to Remand only to the extent that the Court severs and remands Brown's claims against Dr. Housman.

## II.    Motion for Sanctions

Based on Brown's assertion that the parties here are properly joined and non-diverse and because Dr. Housman did not consent to removal, Brown also contends that Guidant should be sanctioned for removing this action.  Here, because the Court finds that Guidant and EVT's removal was proper and because the record does not show bad faith on the part of Guidant or EVT, the Court concludes that sanctions are not warranted.

**IT IS HEREBY ORDERED** that:

1.    Defendant Leland Housman, M.D.'s Motion to Sever Medical Malpractice Action and Remand Case Back to Superior Court, State of California, County of Santa Clara (MDL No. 05-1708 (DWF/AJB), Doc. No. 1801; Civ. No. 07-1487

---

[7]    Guidant and EVT argued alternatively that if the Court found EVT to be a citizen of California, that EVT's citizenship should be disregarded because it was fraudulently joined as a defendant.  Because the Court finds EVT to be a California citizen, it need not address whether EVT was fraudulently joined.  However, "[j]oinder is fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the resident defendant, or where the plaintiff has no real intention of prosecuting the action against the resident defendant." *Schwenn v. Sears, Roebuck & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993).  And, because "contested issues of fact should be resolved in favor of the plaintiff," *id.*, the Court notes that, at this juncture, fact issues would preclude the Court from finding that there is no basis for liability.

(DWF/AJB), Doc. No. 7) is **GRANTED**.  The Court Orders that all claims against Defendant Leland Housman, M.D. are **SEVERED** and **REMANDED** to Superior Court, State of California, County of Santa Clara.

2.     Plaintiff Emmett David Brown's Motion to Remand and Motion for Sanctions [28 U.S.C. § 1447] (MDL No. 05-1708 (DWF/AJB), Doc. No. 1896; Civ. No. 07-1487 (DWF/AJB), Doc. No. 13) is **GRANTED** as to the remand of Defendant Leland Housman, M.D., but **DENIED** as to the remand of all remaining Defendants and **DENIED** as to Brown's Motion for Sanctions.

Dated:  August 30, 2007

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court

14